**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
1303 East Grand Avenue, Suite 101
Arroyo Grande, CA 93420
Telephone: (805) 994-0177
Facsimile: (805) 994-0197

**LAW OFFICE OF ALBERT R. LIMBERG**
Albert R. Limberg, Esq. (211110)
alimberg@limberglawoffice.com
3667 Voltaire Street
San Diego, CA 92106
Telephone: (619) 344-8667
Facsimile: (619) 344-8657

*Attorneys for Plaintiff,*
Timothy McClusky

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MCCLUSKY,<br><br>Plaintiff,<br><br>v.<br><br>GOLDMAN SACHS BANK USA; SOFI LENDING CORP.; EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; AND, TRANS UNION LLC,<br><br>Defendants. | Case No.: '22CV1547 LL   AGS<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF FAIR CREDIT REPORTING ACT**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. TIMOTHY MCCLUSKY ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of GOLDMAN SACHS BANK USA ("Goldman Sachs"); SOFI LENDING CORP. ("SoFi"); EQUIFAX INFORMATION SERVICES LLC ("Equifax"); EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"); and, TRANS UNION LLC ("Trans Union") with regard to attempts by Defendants to unlawfully and abusively collect various fraudulent debts from Plaintiff, inclusive of inaccurate credit reporting to, and by, the Credit Bureaus and this conduct caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief except those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

6. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; and, 15 U.S.C. § 1681p.

8. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA").

9. Because Defendants conduct business within the State of California, personal jurisdiction is established.

10. Venue is proper pursuant to 28 U.S.C. § 1391 since Defendants are subject to personal jurisdiction within the Southern District of California.

## PARTIES

11. Plaintiff is a natural person who resides in Charlotte, North Carolina from whom various debt collectors sought to collect fraudulent consumer debts which are alleged to be due and owing from Plaintiff.

12. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c)

13. Plaintiff is a victim of identity theft.

14. Goldman Sachs is a bank operating from the State of New York.

15. SoFi is a corporation operating from the State of California.

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

16. Goldman Sachs and SoFi are each a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

17. Equifax is a corporation located in the State of Georgia.

18. Experian is a corporation located in the State of California.

19. Trans Union is a corporation located in the State of Pennsylvania.

20. Equifax, Experian, and Trans Union are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. The causes of action herein also pertain to Plaintiff's consumer credit report in that inaccurate representations of Plaintiff's creditworthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

22. Plaintiff is a victim of an extensive identity theft operation operated by an individual named Ken Phillips ("Phillips").

23. In or around September 2018, Plaintiff spoke with an individual identifying himself as Ted Chen ("Chen") seeking information and assistance with credit-related issues.

24. Plaintiff was informed that Chen worked with an individual named Jeff at a company called Jeff Funding and that Jeff Funding was a business that helped people improve their credit scores.

25. During his discussion with Chen, Plaintiff provided Chen with various pieces of identifying information at Chen's request for the stated purpose of repairing Plaintiff's credit score.
26. Chen then utilized Plaintiff's identifying information to open several financial accounts in Plaintiff's name but without Plaintiff's knowledge or consent.
27. Thereafter, Plaintiff learned about the fraudulent accounts and began investigating this issue.
28. Plaintiff believes the total fraud to be more than $110,000.00 and that each of the accounts were opened in 2018.
29. The Goldman Sachs account had $15,000 financed.
30. The SoFi account had $100,000 financed.
31. Given the invasive nature of Chens' fraud, Plaintiff has obtained assistance from the Federal Bureau of Investigation and the Charlotte-Mecklenburg Police Department.

### *Federal Bureau of Investigation*

32. Plaintiff's disputes of the fraud led him to the Federal Bureau of Investigation.
33. Plaintiff eventually learned that Chen and Jeff were working for Ken Phillips.
34. Plaintiff is informed and believes that Phillips has defrauded over 160 individuals for a total of over $19,000,000.00.
35. Plaintiff received a written communication dated April 27, 2021from Elizabeth Appleton ("Appleton"), a Victim Specialist with the FBI.
36. This written communication confirmed that Plaintiff has "been identified as a victim of a federal crime…" and the "case is currently being investigated by the [FBI]."
37. This investigation eventually led to the prosecution of Chen in the matter of *United States of America v. Albert Lugene Lim a.k.a Ted Chen*, Southern District of Texas Case No.: 22-cv-33.

### *Charlotte-Mecklenburg Police Report*

38. Plaintiff also sought the assistance of the Chartlotte-Mecklenburg Police Department.

39. Plaintiff communicated with the police department in May 2021 to report the crimes committed by Chen, Jeff, and Phillips.

40. Therein Plaintiff explained the basis for Plaintiff's belief that Plaintiff is the victim of identity theft and named Chen, Jeff, and Phillips as suspects.

41. Plaintiff also provided the document he received from Appleton regarding the FBI's ongoing investigation of Phillips.

### *Federal Trade Commission*

42. Plaintiff also completed an Identity Theft Victim's Complaint and Affidavit prepared by the Federal Trade Commission.

43. Plaintiff's initial FTC Identity Theft Complaint and Affidavit was completed on September 1, 2021.

44. Therein, Plaintiff explained the basis for Plaintiff's belief that Plaintiff is the victim of identity theft.

45. Said Affidavit lists the account number, balance, and opening date for each fraudulent account.

46. In addition, Plaintiff also identified Chen, Jeff, and Phillips as the fraudsters.

### *The Dispute Process*

47. Plaintiff was unfortunately forced to make significant payments towards these fraudulent debts.

48. Plaintiff believed that he would eventually be absolved of these fraudulent debts since the FBI and the police were involved.

49. Plaintiff began disputing the various fraudulent accounts in or around 2021.

50. These disputes included written and telephonic disputes directly to the furnishers as well as indirect disputes submitted to the Credit Bureaus.

51. In each dispute, Plaintiff explained that he is the victim of identity theft and demanded that the following accounts be deleted:
    - Goldman Sachs
    - SoFi
52. Plaintiff also provided extensive documentation to support Plaintiff's disputes, including:
    - The FTC Identity Affidavit
    - The FTC Identity Theft Report
    - The Charlotte-Mecklenburg Police Report
    - A summary of all fraudulent loans detailing the lender, account number and fraud amount for each loan
    - The FBI's Victim Identification Letter
53. Plaintiff also submitted disputes to the credit bureaus beginning on May 2, 2022 which explained the basis for Plaintiff's belief that he is the victim of identity theft and included substantiating documentation.
54. The Furnishers were then required to conduct a reasonable reinvestigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).
55. The Credit Bureaus were also required to conduct their own reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.
56. Plaintiff then received the results of the purported investigations conducted by each of the Furnishers and Credit Bureaus.
57. Despite receipt of Plaintiff's disputes, Defendants continued inaccurate credit reporting regarding the fraudulent debts to Plaintiff's credit reports.

58. To date, the Furnishers inaccurate credit reporting remains on Plaintiff's Credit Reports.
59. The Furnishers submit inaccurate credit information regarding Plaintiff to the Credit Bureaus every thirty days.
60. Each Claimant actively engaged in collection efforts directed towards Plaintiff regarding the fraudulent debts.
61. Through these reporting and collection efforts, each Claimant is continuing to maintain an interest in the fraudulent debts.
62. The Credit Bureaus did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).
63. Defendants' investigations were unreasonable.
64. More specifically, the Furnishers should have discovered from their own records, including Plaintiff's formal dispute, that the information being reported was inaccurate and materially misleading.
65. Plaintiff contends that it was unreasonable to not contact Plaintiff for further information if needed; to not contact the Charlotte-Mecklenburg Police Department; and, to not contact the Federal Bureau of Investigation.
66. Accordingly, the Furnishers each failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).
67. The Furnishers failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).
68. Due to the Furnishers' failure to reasonably investigate, the Furnishers further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

69. By inaccurately reporting account information after notice and confirmation of its errors, the Furnishers failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E).

70. The Credit Bureaus also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

71. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's dispute with the Credit Bureaus were fruitless.

72. Defendants continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

73. Defendants continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

74. Defendants' failure to correct the previously admitted inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

75. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

76. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

77. Defendants' conduct has caused Plaintiff pecuniary loss.

78. Defendants' conduct has caused Plaintiff emotional distress.

79. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

80. While Plaintiff was thorough in Plaintiff's disputes at all times, each Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.

81. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and embarrassment continue to this day because these large charge-offs mischaracterize Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.

82. Moreover, Plaintiff is incredibly concerned that the outstanding debts will have a direct impact on Plaintiff's employment.

83. Despite Plaintiff's repeated attempts, Defendants continue to report fraudulent debts to Plaintiff's credit report.

84. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

85. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

86. By intentionally reporting continuing obligations, Defendants acted in conscious disregard for Plaintiff's rights.

87. To report an ongoing obligation despite the fraudulent nature of these accounts shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

CASE NO.: 9 OF 12 *McClusky v. Goldman Sachs Bank USA, et al.*
**COMPLAINT**

88. The continued pursuit of Plaintiff through direct collection efforts and credit reporting despite the fraudulent nature of these accounts shows that the Furnishers took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

89. Since Plaintiff's efforts to be absolved of the fraudulent debts were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF
## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681-1681X (FCRA)
## [AGAINST ALL DEFENDANTS]

90. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

92. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

93. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA; and,
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

94. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 10, 2022                                    Respectfully submitted,

**LOKER LAW, APC**

By:    /s/ Matthew M. Loker
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF